IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| MICHAEL BYRD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:10-cv-0047 |
| ) | Judge Trauger |
| ABC PROFESSIONAL TREE SERVICE, ) | |
| INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Pending before the court is the Motion for Summary Judgment filed by the defendant (Docket No. 20), to which the plaintiff has filed a response (Docket No. 24), and in support of which the defendant has filed a reply (Docket No. 34). For the reasons discussed below, the defendant's motion will be denied.

## FACTS

The plaintiff, Michael Byrd, worked for defendant ABC Professional Tree Service, Inc. ("ABC") from September 2007 through July 2008.[1] He alleges that ABC violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. 201 *et seq.*, by failing to pay him for all hours worked and failing to pay proper overtime.

---

[1] Unless otherwise noted, the facts are drawn from the parties' statements of undisputed facts, responses thereto, and related exhibits (Docket Nos. 22, 23, 27, and 35). The court draws all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Brown v. United States*, 583 F.3d 916, 919 (6th Cir. 2009).

1

ABC, which is based in Houston, Texas, provides vegetation management and tree trimming services throughout the country. The plaintiff worked for ABC as a "trim lift bucket truck" driver. He alleges that, during his first several months of employment, he was required to perform approximately two hours of uncompensated work each day and that he sometimes worked entire days without pay. The plaintiff further alleges that ABC's confusing timekeeping methods – in particular, the fact that his time sheets were often signed by someone else – exacerbated the problem. The plaintiff claims that he complained to various supervisors regarding the unpaid overtime but that they were unresponsive.

In May 2008, the plaintiff began working on a job for a different ABC customer, and from that point forward he was compensated for all hours worked. On June 7, 2010, the plaintiff filed this suit, which alleges violations of § 207 of the FLSA and seeks back wages and unpaid overtime. The defendant denies that it violated the statute.

ABC has previously faced investigations by the Department of Labor ("DOL") related to FLSA violations. The plaintiff has submitted a DOL press release, dated February 15, 2007, announcing that ABC agreed to pay $1.8 million in overtime back pay to 2,501 employees in 16 states following a DOL investigation. (Docket No. 24, Ex. 2.) The press release states that the investigation revealed that, between August 2004 and August 2006, ABC had "violated the overtime provisions of the [FLSA]." (*Id.*) It further states that "[a] portion of the back wages will go to workers who worked for the company in the aftermath of Hurricane Katrina." (*Id.*)

In a verified interrogatory response, ABC stated that it "provides lodging for its crews when they are away from home" and that, "due to the massive numbers of persons displaced by

the 2005 hurricanes, Defendant was unable to find accommodations for many of its employees working in the affected area." (Docket No. 22, Ex. 3 at 4.) ABC has also submitted the affidavit of its president, Rocio Jasso, who states that the DOL opened its inquiry in August 2006 as a result of "ABC's inability to find appropriate lodging for its employees during the hurricane clean-ups." (Docket No. 34, Ex. 1 ¶ 9.) According to Jasso, the DOL "ultimate[ly] developed a formula it applied across the company to calculate back wages and ABC paid the amount determined by the [DOL]." (*Id.*)

The DOL also apparently investigated ABC on a smaller scale in 2005. The plaintiff has submitted a "Compliance Action Report," dated June 16, 2005, from the Nashville, Tennessee district office of the DOL's Wage and Hour Division. (Docket No. 24, Ex. 1 at 2-3.) The report lists a Nashville address for ABC. (*Id.* at 2.) It cites the company for FLSA violations for failing to pay minimum wage and failing to pay proper overtime to one employee. (*Id.*) The "Conclusions & Recommendations" section of the document states, in relevant part:

> Payroll manager Laura Solis ATP one EE for more than one month's wages last check.[2] . . . EE notified WH of rec. of partial BW. Employee was due BW for more than mo. period, [d]ue to WH intervention company advanced partial payment due to the EE. Company then reviewed hrs and compensated for any balance of hours and OT due. EE has been informed and has accepted the BWs found to be due.

(*Id.* at 3 (minor grammatical corrections included).) The document indicates that ABC agreed to pay $2,445 in back wages and overtime and agreed to comply with the FLSA in the future. (*Id.*

---

[2] It appears that "ATP" means "agreed to pay," "EE" means "employee," "WH" means "Wage and Hour Division," and "BW" means "back wages."

at 2.)

In her affidavit, Jasso states that she "has no recollection" of this DOL investigation, nor does ABC have any record "at the corporate office" of it. (Docket No. 34, Ex. 1 ¶ 4.) She also searched and "found no check written to any payee for any of the amounts shown" in the report. (*Id.*) Jasso states that any communication with the DOL "should come through [her] as the President of the company" and that "[n]o other person is authorized to speak to the [DOL] on behalf of ABC unless [she] direct[s] them to do so." (*Id.* ¶ 3.) She further states that she did not authorize anyone to speak to the DOL and that ABC does not have, and has never had, a physical office in Tennessee.

The defendant has also submitted the affidavit of Laura Soliz, ABC's payroll manager, who was mentioned in the Compliance Action Report as "Laura Solis." Soliz states that she "did not take part in any investigation by the [DOL] as reflected in" the report. (Docket No. 34, Ex. 2 ¶ 2.) She, too, states that ABC's corporate office has no record of any such investigation. (*Id.*)

Finally, ABC was the subject of another DOL investigation in March 2010. That investigation, however, did not find that ABC owed any overtime wages, and, regardless, it took place after the FLSA violations alleged by the plaintiff. (Docket No. 22, Ex. 3 at 5.)

The defendant has filed a Motion for Summary Judgement, pursuant to Federal Rule of Civil Procedure 56, arguing that the plaintiff's claims are barred by the applicable statute of limitations.

## ANALYSIS

**I.    Summary Judgment Standard**

Rule 56 requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If a moving defendant shows that there is no genuine issue of material fact as to at least one essential element of the plaintiff's claim, the burden shifts to the plaintiff to provide evidence beyond the pleadings "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "In evaluating the evidence, the court must draw all inferences in the light most favorable to the [plaintiff]." *Moldowan*, 578 F.3d at 374.

At this stage, "'the judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). But "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient," and the plaintiff's proof must be more than "merely colorable." *Anderson*, 477 U.S. at 249, 252. An issue of fact is "genuine" only if a reasonable jury could find for the plaintiff. *Moldowan*, 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## II. Statute of Limitations

The defendant argues that the plaintiff's claims are time-barred because he cannot show that ABC's actions were willful. The statute of limitations applicable to FLSA claims provides a two-year limitations period, unless the claim "aris[es] out of a willful violation," in which case the limitations period is three years. 29 U.S.C. § 255(a). The plaintiff concedes that he must

5

show willfulness to recover, because ABC's alleged violations all occurred more than two years before he filed this suit. (Docket No. 33 at 2.)

In *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988), the Supreme Court construed "willful" to be "synonymous with such words as 'voluntary,' 'deliberate,' and 'intentional.'" *Id.* at 133. The Court rejected a standard of willfulness that would extend the limitations period merely because "an employer knew that the FLSA 'was in the picture,'" because "it would be virtually impossible for an employer to show that he was unaware of the Act and its potential applicability." *Id.* at 132-33 (quotation marks omitted). Instead, the Court held that a violation is only willful if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Id.* at 133. This requires something more than mere negligence by the employer. *Id.* at 135.

The Sixth Circuit has liberally applied the *McLaughlin* standard, repeatedly holding that previous DOL investigations regarding overtime violations are evidence that subsequent FLSA violations are willful. In *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962 (6th Cir. 1991), the Secretary of Labor sued the defendant travel agency for failing to pay overtime for hours in excess of 40 per week and for failing to account for employees' commissions when calculating the overtime rate. *Id.* at 964. The Secretary argued that these violations were willful because the defendant "had actual knowledge of the overtime provisions of the FLSA prior to the violations at issue." *Id.* at 967. More than ten years earlier, in 1975, the defendant's predecessor company was investigated for "overtime violations," and it agreed to pay back wages and to comply with the FLSA in the future. *Id.* That same year, a DOL area director conferred with the company's

6

owner after receiving an employee complaint, and the owner "refused to pay the overtime wages which were due." *Id.* The Sixth Circuit held that, because the defendant's owner "had actual notice of the requirements of the FLSA by virtue of earlier violations, his agreement to pay unpaid overtime wages, and his assurance of future compliance with the FLSA," the circumstances satisfied the willfulness standard laid out in *McLaughlin*, and the three-year limitations period applied. *Id.*

Similarly, in *Herman v. Palo Group Foster Home, Inc.*, 183 F.3d 468 (6th Cir. 1999), the Secretary of Labor sued the defendant foster home, alleging that it had violated the FLSA by (1) failing to properly compensate employees for sleep time, (2) paying set wages regardless of actual hours worked, and (3) deducting expenses for meals and lodging from employees' pay despite insufficient recordkeeping. *Id.* at 471. Twelve years earlier, the DOL had "discovered violations of the Act's minimum wage and overtime requirements," and the owner had agreed to comply with FLSA requirements in the future. *Id.* In addition, ten years earlier, the DOL found that the defendant had violated the FLSA by improperly claiming credit for meals and lodging without keeping sufficient records. *Id.* The Sixth Circuit, citing *Elliott Travel*, held that these previous investigations showed willfulness:

> There is undisputed evidence that [the defendant company's owner] had actual notice of the requirements of the [FLSA]. He had been investigated for violations twice in the past, paid unpaid overtime wages, received explanations of what was required to comply with the Act, and assured the DOL that he would comply in the future. The district court properly found that Defendants' violations were willful and extended the limitations period to three years.

*Id.* at 474.

Here, the plaintiff has submitted evidence that ABC was twice investigated by the DOL for minimum wage and overtime violations and that both times it agreed to pay back wages.[3] In response to the June 2005 investigation (and, presumably, the August 2006 investigation), ABC agreed to comply with the FLSA in the future. This is enough, under *Elliott Travel* and *Palo Group*, to create an issue of fact regarding whether the violations alleged by the plaintiff were willful, and thus whether the three-year limitations period applies to the plaintiff's claims.

The defendant claims that neither of the previous DOL investigations supports the contention that the instant alleged violations were willful. First, it argues that the August 2006 investigation is irrelevant because the violations at issue in that investigation were dissimilar from the violations alleged by the plaintiff. (Docket No. 21 at 8-9; Docket No. 34 at 2-3.) The defendant reasons that, because the investigation arose after the company's difficulties in finding lodging for employees working in the aftermath of Hurricanes Katrina and Rita, those violations were "completely different factually from the claims raised by Plaintiff in this lawsuit." (Docket No. 21 at 8.) It argues that "[s]uch inability to find lodging obviously implicates the DOL

---

[3] The defendant argues that the DOL's February 2007 press release is inadmissible hearsay. (Docket No. 21 at 9 n.3.) This is incorrect. Federal Rule of Evidence 803 provides hearsay exceptions for "[r]ecords, reports, [or] statements . . ., in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or . . . (C) . . . factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness." Fed. R. Evid. 803(8). The press release at issue here falls within at least one of these two exceptions. *Cf. Patterson v. Cent. Mills, Inc.*, 64 Fed. Appx. 457, 462 (6th Cir. 2003) (finding that portions of a Consumer Products Safety Commission press release were inadmissible hearsay only because they contained the opinions of an individual member, rather than of the commission itself); *see also Zeigler v. Fisher-Price, Inc.*, 302 F. Supp. 2d 999, 1021 n.10 (N.D. Iowa 2004) ("To the extent the press release can be construed as stating conclusions or opinions of the [Consumer Products Safety Commission], it also was admissible under [Rule] 803(8)(C).")

regulations regarding providing sleeping time to employees." (Docket No. 34 at 2 (citing 29 C.F.R. §§ 785.20-.22).)

In support, the defendant cites a Fifth Circuit case, *Reich v. Tiller Helicopter Services, Inc.*, 8 F.3d 1018 (5th Cir. 1993). In *Tiller*, the Secretary of Labor sued the defendant for failure to pay minimum wage and proper overtime, and the defendant argued that its employees fell under an agricultural exception to the FLSA. *Id.* at 1023. The Secretary sought to show that the violations were willful because the DOL had previously investigated the defendant, but the district court found that the Secretary had not shown that the investigation was "sufficiently similar to the violations underlying the present action." *Id.* at 1036. The Fifth Circuit held that this finding was not clearly erroneous, because the previous investigation apparently did not involve the agricultural exception and because nothing indicated that the earlier violations were "substantially similar" to the pending violations. *Id.*

*Tiller* is not controlling law in this circuit, however, while *Elliot Travel* and *Palo Group* are. The two Sixth Circuit cases – one of which post-dates *Tiller* – strongly imply that, as long as a defendant's previous and current violations both involve unpaid overtime, the violations are similar enough to support a finding of willfulness. *See Elliott Travel*, 942 F.2d at 967 (merely stating that the previous investigations involved "overtime violations"); *Palo Group*, 183 F.3d at 471 (merely stating that one previous investigation involved "violations of the Act's minimum wage and overtime requirements"). These cases do not indicate that the precise factual circumstances surrounding the violations need to be substantially similar. Instead, they simply require that the previous investigations gave the defendant "actual notice of the [overtime]

9

requirements of the FLSA." *Elliott Travel*, 942 F.2d at 967. The defendant has cited no Sixth Circuit case law to the contrary.[4]

Here, the DOL's press release expressly states that the August 2006 investigation concerned ABC's failure to pay proper overtime. Although the defendant argues that the investigation was strictly limited to employees working on hurricane cleanup, the investigation covered a period starting August 2004, which was before the hurricanes struck; in addition, at least some of the back wages paid by ABC were given to employees who had nothing to do with hurricane cleanup. (Docket No. 24, Ex. 2 ("*A portion* of the back wages will go to workers who worked . . . in the aftermath of Hurricane Katrina." (emphasis added)); Docket No. 34, Ex. 1 ¶ 9 (stating that the back pay formula developed by the DOL was "applied across the company"). In any event, it is clear that the investigation involved unpaid overtime and that it provided actual notice to ABC of the FLSA's overtime requirements.

Second, the defendant argues that the June 2005 investigation is irrelevant, because ABC's corporate office has no record of the investigation and because whoever responded to the DOL on ABC's behalf had no authorization from the company's president. (Docket No. 34 at 3-4.) It further argues that the violations at issue in the June 2005 investigation were not substantially similar to the violations alleged by the plaintiff. (*Id.* at 4.)

Again, these arguments are unpersuasive. The defendant has cited no case law for the

---

[4] The defendant cites *Takacs v. Hahn Auto. Corp.*, No. C-3-95-404, 1997 U.S. Dist. LEXIS 23780 (S.D. Ohio Apr. 16, 1997), but, in that case, the plaintiffs failed to show that the defendant knew or recklessly disregarded, "by virtue of previous violations," that it was violating the FLSA. *Id.* at *33.

proposition that it may narrowly circumscribe the employees authorized to interact with the DOL. Also, despite ABC's corporate payroll manager's claims to the contrary, the Compliance Action Report explicitly states that the DOL contacted her regarding the violation. There is thus a question of fact as to whether employees at ABC's corporate office were involved in the investigation. Moreover, given that the DOL successfully resolved the situation, it seems likely that the agency dealt with some sort of supervisory or management employee, whose knowledge is properly imputed to the company. *See Cavin v. Honda of Am. Mfg.*, 346 F.3d 713, 726 n.8 (6th Cir. 2003) ("[U]nder the Fair Labor Standards Act, 'knowledge of its supervisors is imputed to the employer.'" (quoting *Cunningham v. Gibson Elec. Co.*, 43 F. Supp. 2d 965, 975 (N.D. Ill. 1999))). Finally, as with the August 2006 investigation, the June 2005 investigation clearly involved unpaid overtime.

In sum, because there is sufficient evidence that two previous DOL investigations found FLSA violations by the defendant for failure to pay proper overtime, there is a question of fact as to whether the violations alleged by the current plaintiff were willful. Accordingly, the three-year limitations period might apply, and the defendant's motion must be denied.

## CONCLUSION

For the reasons discussed above, the defendant's Motion for Summary Judgment will be denied.

An appropriate Order will enter.

ALETA A. TRAUGER
United States District Judge